UNITED STATES of America, Appellee,

v.

Lawrence A. KLEIN, Defendant-Appellant.

No. 75–1105.

United States Court of Appeals, First Circuit.

July 28, 1975.

* First Circuit, Sitting by Designation.

Martin G. Weinberg, Boston, Mass., with whom Jeffrey J. Binder and Crane, Inker & Oteri, Boston, Mass., were on brief, for appellant.

Lawrence P. Cohen, Asst. U. S. Atty., Deputy Chief, Crim. Div., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Lawrence A. Klein appeals from a judgment of conviction entered by the District Court for the District of Massachusetts. Klein and a codefendant, Allison Bernier, were indicted for distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2, and for conspiracy to so distribute in violation of 21 U.S.C. § 846. Bernier entered a plea of guilty to both counts. Klein waived his right to a jury trial and was tried by the court on both.

The district court heard all the evidence offered by the Government, reserving decision on Klein's motion to suppress the fruits of a search by federal agents, his motion to strike alleged hearsay declarations of Bernier, and his motion for a judgment of acquittal. Several months after the trial, the district court denied the motion to suppress and the motion to strike and found Klein guilty as charged. The court recited findings of fact in support of its decision, see Fed.R.Crim.P. 23(c), which we excerpt here.

"Now with respect to the facts in this case, I find that on or about 9:30 a. m. on April 12, 1974, Special Agent Harry Barton received a telephone call from Miss Bernier. Miss Bernier told Agent Barton that she and a friend had four ounces of cocaine which they wanted to sell for $1400 per ounce.

Agent Barton told Miss Bernier to call back in an hour, and at approximately 10:30 a. m. Miss Bernier called and arrangements were made for her to meet him at Kenmore Square at around 1 p. m.

At approximately 1 p. m. Agent Barton did arrive at Kenmore Square. He parked on Deerfield Street, and shortly thereafter Miss Bernier arrived in an MG and beeped her horn. Agent Barton entered Miss Bernier's vehicle, and they drove around the corner to Deerfield Street.

After the car was parked, Miss Bernier told Agent Barton that she only had one ounce of cocaine with her and that the rest of the cocaine was with a friend of hers who was only a few minutes away.

Miss Bernier gave Mr. Barton a sample of the ounce which she claimed to have. He field tested this ounce, and the field test indicated that the sample given him contained cocaine.

Agent Barton returned to Miss Bernier's vehicle and paid her $1400 in official government funds. Miss Bernier handed Agent Barton one ounce of cocaine. The serial numbers of the fourteen $100 bills given to Miss Bernier had previously been recorded by Agent Barton.

The one-ounce package of cocaine which Miss Bernier handed to Agent Barton was removed by her from her pocketbook. During the process Agent Barton looked into Miss Bernier's pocketbook and did not observe any other cocaine, nor did he observe any other cocaine in the vehicle.

Miss Bernier then stated that she would go see her friend who was just

up the street and that she would return in approximately ten minutes.

After saying this, Miss Bernier drove away from Agent Barton; and after she had done so, Agent Barton advised surveillance agents in the area that Miss Bernier was moving to meet someone to pick up the rest of the cocaine.

As Miss Bernier drove away from Agent Barton, she was followed by Agents Doyle and Staffieri.

Upon arriving on Bay State Road, Miss Bernier got out of her vehicle and entered a Jaguar driven by the defendant, Mr. Klein. After remaining in the Jaguar for about five minutes, Miss Bernier got out of that car and reentered her own car and then drove away.

She shortly thereafter returned back to where she had left Agent Barton, and again Agent Barton entered her vehicle. When he had done so, he asked her if she had picked up the rest of the cocaine, and Miss Bernier responded that she had and while so responding removed from her pocketbook a plastic bag containing three ounces of cocaine.

Agent Barton then left her vehicle on the pretext of obtaining some money; and after he had done so, other agents appeared on the scene and placed her under arrest.

Shortly after this had happened, Mr. Klein was approaching the area on foot. He came into the view of Miss Bernier and the agents that accompanied her. In response to a question by Agent Sampson, Miss Bernier pointed at the defendant Klein who was walking down the street in her immediate vicinity and identified Mr. Klein as her "source."[1] Following this identification by Miss Bernier, Klein was immediately placed under arrest.

After his arrest, Mr. Klein was taken to the John F. Kennedy Federal Building, where he was ordered by Agent Doyle to strip. He was under arrest at this time.

Mr. Klein, in response to Doyle's order, took off his jacket and shirt. Then he opened up his pants and handed Agent Doyle $1400 in one hundred dollar bills from his underwear.

Agent Doyle took the fourteen bills and gave them to Agent Barton, who compared their serial numbers with the list of serial numbers taken from the bills he had earlier removed from the vault, in other words, the official government currency, and the numbers on the bills and the numbers on the list kept by the agent matched exactly.

After having handed over the $1400, Klein continued to strip. After he had done so, he was ordered to bend over, and he was examined visually by Agent Doyle, including a visual examination of his rectum."

Our review of the transcript convinces us that these findings are adequately supported by the evidence offered at the trial. We therefore pass onto Klein's contentions that his motions to suppress and to strike should have been granted.

## I

Klein argues, in support of his motion to suppress, that his arrest was without probable cause and therefore illegal. It follows, he contends, that the $1400 should have been suppressed as the fruit of an illegal search. We think the district court was correct in concluding that there was probable cause to arrest.

 Probable cause exists where the facts and circumstances in the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed. *See Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327

---

1. This statement was offered solely on the issue of probable cause to arrest Klein, Part I *infra*. We do not consider it with respect to appellant's sufficiency of the evidence claim, Part III *infra*, nor as part of the independent basis for finding a conspiracy, Part II *infra*.

(1959); *United States v. Mark Polus,* 516 F.2d 1290 (1st Cir. 1975). Here the agents had information which would lead them to conclude that Bernier was working with an accomplice who had been waiting in another vehicle close by and had held the bulk of the cocaine for the sale. They then received from Bernier information that Klein was that accomplice. This was sufficient to justify their arrest of Klein.

Klein's alternate argument on the motion to suppress concerns the validity of the search of his person at the Kennedy Building. Citing the fourth and ninth amendments to the Constitution, Klein contends that even if his arrest was legal, the strip search was unreasonable.

■ As the agents had probable cause to arrest Klein, both his person and the property in his immediate possession were subject to search after his arrest. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *United States v. DeLeo,* 422 F.2d 487 (1st Cir.) *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); *see, e. g., Mark Polus, supra. United States v. Eatherton,* 519 F.2d 603 (1st Cir. 1975). And the search could be conducted at the time of arrest, or where he may later be taken. As we said in *DeLeo,* "the fact that a suspect, arrested in a public place, has been subjected only to a hasty search for obvious weapons has a reasonable nexus with the necessity of conducting a more deliberate search for weapons or evidence just as soon as he is in a place where such a search can be performed with thoroughness and without public embarrassment to him." *Id.* at 493.

■ Against this, Klein argues that the search to which he was subjected was illegal because "shocking" and too intrusive. The Government counters that since the $1400 was handed over voluntarily, the further enforced stripping and peering at his body, including at his rectum, afford no reason to suppress the $1400. We do not decide the Government's argument, because we find no basis for agreeing with Klein that the brief strip search of his person, conducted without abuse and in a professional manner, was unconstitutional. A post-arrest search of the person, plainly authorized by *Edwards* and *DeLeo,* may include requiring a suspect to remove his clothes and a visual inspection of his person. *Cf. United States v. Caruso,* 358 F.2d 184 (2d Cir.) *cert. denied,* 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966). That is all that happened here. If such procedures were not permissible it would often be difficult to conduct a thorough search for weapons and contraband.

■ The facts are not akin to the taking of blood considered in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). There the Court, while permitting the enforced taking of a blood sample, limited "searches involving intrusions beyond the body's surface" to cases where authorities possess "a clear indication that in fact . . . evidence will be found," *id.* at 770, 86 S.Ct. at 1835. But the present facts do not require us to consider the extent to which compulsory medical procedures may be imposed upon persons lawfully arrested. There was no piercing or probing of Klein's skin, nor forced entry beyond the surface of his body. There was not even any touching of his body. Thus, his only claim is based upon the indignity of being forced to strip in front of the agents and to expose his private parts. But there is no evidence that the stripping was a pretext to humiliate or degrade him,[2] and the modesty of one lawfully arrested must give way to reasonable precautionary procedures designed to detect hidden evidence, drugs, or objects which might be used

---

**2.** The Government states that it is customary procedure for drug enforcement agents to conduct a thorough search of suspects before turning them over to the United States Marshal, and that this search was in accordance with that practice. While it may be that the agents had no particular reason to suspect that Klein was harboring evidence, we see nothing unreasonable about a uniform rule of the type in question.

against others or to cause self-inflicted harm. Rules limiting strip searches during border inspections are entirely inapposite, since border searches are permitted upon mere suspicion. *See, e. g., United States v. Arias Flores,* 477 F.2d 608, 609 (1st Cir.), *cert. denied,* 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973); *United States v. Guadalupe-Garza,* 421 F.2d 876, 879 (9th Cir. 1970). We find nothing unreasonable in the circumstances of the instant search. And as the search was lawful, there was no illegality in the seizure of the bills.

## II

The agents' testimony reciting declarations of Bernier was admitted by the district court under the coconspirator exception to the hearsay rule. Appellant advances three challenges to the court's consideration of these declarations: that there was no independent evidence establishing the existence of a conspiracy, *cf. United States v. Oliva,* 497 F.2d 130, 132–34 (5th Cir. 1974), that the statements were not made during the course of and in furtherance of any conspiracy, and that the coconspirator exception as here applied violates the confrontation clause of the sixth amendment. We reject all three arguments.

■ Disregarding the declarations of Bernier, there was evidence that when she arrived at Kenmore Square she had only one ounce of cocaine with her and that when she returned from meeting Klein in a vehicle a few blocks away she had three more ounces. Further there was the $1400 which had been given to Bernier before she left and was discovered concealed in Klein's underwear shortly after they had met. This evidence was credible and supported a finding of concerted action sufficiently to permit consideration of Bernier's declarations under the coconspirator exception to the hearsay rule.

■ We see no merit to appellant's contention that Bernier's statements were not in furtherance of the conspiracy. All were directly related to the sale of the four ounces of cocaine, and some were indeed a part of that sale. Klein also appears to argue that the statements of Bernier over the phone the morning before the sale should not have been introduced against him because there was no evidence to indicate that he was part of any conspiracy at that time. As he presents it, this is not properly a question of whether these statements were within the conspiracy to distribute cocaine. It seems more an objection to whether all the evidence supported the court's verdict that Klein had been a part of that conspiracy, discussed *infra.*

■■ Insofar as Klein's confrontation clause argument is a challenge to the constitutionality of the federal coconspirator exception to the hearsay rule, we rejected the claim in *United States v. Clayton,* 450 F.2d 16 (1st Cir. 1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972); and we see no reason to alter our holding on the issue. *Cf. Woodcock v. Amaral,* 511 F.2d 985, 995 (1st Cir. 1974). Appellant urges that the special facts of illegal drug trafficking remove from Bernier's statements those "indicia of reliability" which the confrontation clause requires. *See McLaughlin v. Vinzant,* 522 F.2d 448 (1st Cir. 1975). Agent Barton did testify on cross-examination that some drug sellers might so fear being robbed by putative purchasers that they would concoct stories of nonexistent accomplices in the hope of deterring such acts. But that information was presented to the trier of fact and in view of Klein's actual participation in some overt acts with Bernier could legitimately have been discounted. In his brief appellant points out that, "The trial offered no opportunity to cross-examine Bernier to learn whether or not she created the false impression of a *knowing friend* from whom

she would obtain the second allotment of cocaine out of the reality of an *innocent friend* who later received the money absent any actual knowledge of its source." While this may be true, we think that it, like the argument regarding the temporal extent of the conspiracy, goes to the merits of the court's guilty verdict rather than to the admissibility of Bernier's statements. We disagree with appellant's contention that there was any indication that Bernier possessed "a strong motive to falsify" her statements, and hold that they were properly admitted for the court's consideration.

### III

We come finally to appellant's contention that his motion for judgment of acquittal should have been granted. Klein argues that even considering Bernier's statements, the evidence was insufficient to establish that he had been anything other than an accessory after the fact in the sale of the cocaine to Agent Barton. Continuing the line of argument quoted above from his brief, Klein constructs an elaborate hypothesis which includes his innocently agreeing to assist Bernier in collecting money owed to her, becoming suspicious when she did not return promptly, worrying that she might be in trouble, hiding the money in his clothing and starting towards Kenmore Square. It is true that, as Klein contends, such an hypothesis is consistent with the evidence offered at the trial. But that does not entitle him to an acquittal.

The choice among various reasonable constructions of the evidence is for the trier of fact. The court's verdict will be sustained if, viewing the evidence in the light most favorable to the Government, *United States v. Doran,* 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974), the total evidence warrants the conclusion that Klein is guilty beyond a reasonable doubt. *Dirring v. United States,* 328 F.2d 512, 515 (1st Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964); *see United States v. Concepcion Cueto,* 515 F.2d 160 (1st Cir. 1975). The evidence here meets that standard.

*Affirmed.*