UNITED STATES of America, Appellee,

v.

Paul WISEMAN, Defendant, Appellant.

No. 86–1865.

United States Court of Appeals,
First Circuit.

Heard March 2, 1987.
Decided March 27, 1987.

Karnig Boyajian, Boston, Mass., for defendant, appellant.

William H. Kettlewell, Asst. U.S. Atty., with whom Robert S. Mueller, III, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

PER CURIAM.

Appellant was convicted, after a jury-waived trial in the United States District Court for the District of Massachusetts, of one count of conspiracy to possess heroin with intent to distribute, 21 U.S.C. § 841(a)(1) (1982), and of two counts of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1) (1982).

In the fall of 1985, Drug Enforcement Agent Reginald Tillery was conducting an undercover investigation, posing as a drug buyer. The investigation had so far result-

ed in several purchases of heroin from co-defendants Melvin Smith and Otis Glenn. On November 25, 1985, and again on December 3, 1985, Agent Tillery arranged to meet with codefendant Smith in order to purchase some more heroin. Tillery and Smith agreed to meet at a Howard Johnson's Restaurant in Dorchester, Massachusetts. In the afternoon of December 3, 1985, Agent Tillery together with Agent Kathleen Bennett (who was posing as Tillery's girlfriend) drove to the restaurant. Tillery went into the restaurant while Agent Bennett stayed in the car. Other Drug Enforcement Agents were also stationed in the parking lot for surveillance.

Smith arrived by taxi, together with appellant, Paul Wiseman, and they joined Agent Tillery in a booth. Smith introduced appellant to Agent Tillery by stating something to the effect that "This here is Mac. He was brought up from the City to help distribute the junk on the street because business has been so good." Appellant silently acknowledged the introduction by nodding.[1] Thereafter, in appellant's presence, Tillery and Smith discussed a possible purchase of two and one-half ounces of heroin for $29,000. They also discussed the possibility of Tillery's obtaining a gun from Smith. Tillery and Smith then went to the parking lot while appellant remained in the restaurant. Agent Bennett showed Smith a roll of cash representing $15,000, ostensibly to prove to Smith that they were serious about the drug deal. Agents Tillery and Bennett then left in their car. Surveillance agents observed appellant come out of the restaurant, converse with Smith, and then leave the area with Smith in a taxi.

On December 4, 1985, Agent Tillery talked to Smith by telephone, and they arranged to meet at the same restaurant in order to consummate the drug deal that had been discussed on the previous day. Smith told Tillery that he would probably bring "Mac" or someone else along with him. Also on December 4, it was decided that Tillery's undercover operation would

be concluded by arresting Smith and his co-conspirators if they appeared with the heroin at the Howard Johnson's.

Later that afternoon, Agents Tillery and Bennett were waiting in a booth at the restaurant when Smith arrived alone. Smith took a bag of what he said was heroin from underneath his coat. Tillery suggested that he and Smith should go into the men's room so that he could inspect the heroin. As Tillery and Smith were returning to the booth, Tillery gave a prearranged signal to the agents, who were stationed both inside the restaurant and out in the parking lot, that the deal was proceeding and that Smith should be arrested.

Tillery and Smith rejoined Bennett at the booth, and soon thereafter Tillery suggested that Smith should accompany him outside to the parking lot so that they could finalize the drug deal. As they were leaving, appellant entered the restaurant through the front door and joined them. Smith directed Wiseman to sit at the booth with Bennett while he and Tillery went outside to conduct their business. Appellant joined Bennett in the booth and identified himself as "Mac." As agents began arresting Smith in the parking lot, Agent Bennett leaned across the table and put her hands on appellant's wrists. Other agents approached the booth and told appellant he was under arrest. When appellant was searched at DEA headquarters, 27 packets of heroin were found inside appellant's undershorts. The 27 packets containing the heroin were in the same packaging material as those seized from Smith, and the percentage purity of the heroin was also the same.

## I.

Before the trial, appellant moved in the district court to suppress the 27 packets of heroin that were discovered during the search incident to his arrest. He argued that the heroin was seized pursuant to an

---

1. There was no evidence at the suppression hearing of appellant's having nodded. At the bench trial, following the court's denial of the motion to suppress, Agent Tillery first testified that appellant had nodded in silent acknowledgment of the introduction.

invalid arrest since the agents lacked probable cause to arrest him.

The district court held a pre-trial suppression hearing, finding the facts to have been materially as stated above (except the court made no finding of a nod in response to Smith's introduction, that evidence not having as yet been presented). *See* note 1, *supra.* Concluding the agents had probable cause to arrest appellant, the court refused to suppress the 27 packets of heroin. 648 F.Supp. 499. Wiseman appeals from that determination.

The findings by a district court in a suppression hearing are binding on appeal unless they are clearly erroneous. *United States v. Baldacchino,* 762 F.2d 170, 175 (1st Cir.1985). Probable cause exists if the facts and circumstances within the agent's knowledge are sufficient to warrant a man of reasonable caution to believe that the suspect had committed or was committing an offense. *Id.; Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

> The determination of whether probable cause exists must not rest on isolated facts; rather, it depends upon the cumulative effect of the facts in the totality of circumstances. Probability, not a prima facie showing of criminal activity, is the standard of probable cause.

*Baldacchino,* 762 F.2d at 175.

■ We affirm the district court's finding that there was probable cause to arrest. Even without the "nod" evidence, a person of reasonable caution would have been warranted in believing that appellant was part of the continuing conspiracy to sell heroin. Appellant's silent acquiescence in Smith's introduction as a drug distributor, his voluntary presence during the negotiations, and his reappearance at the restaurant the next day while the deal was in progress, clearly implied his complicity. Since there was probable cause to arrest appellant, the evidence found in the subsequent search of his person was admissible.

## II.

At the trial, the district court admitted, over objection, the statements allegedly made by codefendant Smith when introducing appellant. Appellant contends that testimony as to Smith's introduction of appellant as "Mac," who was brought up from the City to put the "junk" on the street, should not have been admitted as an adoptive admission of appellant, pursuant to Fed.R.Evid. 801(d)(2)(B). This circuit has established the requirements for an adoptive admission:

> When a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth ... if made "under such circumstances as would warrant the inference that he would naturally have contradicted them if he did not assent to their truth." *Arpan v. United States,* 260 F.2d 649, 655 (8th Cir.1958).

*United States v. Fortes,* 619 F.2d 108, 115–16 (1st Cir.1980).

In the present case, the district court made a preliminary determination as to the admissibility of this evidence, stating as follows:

> The defendant and the individual known as Melvin Smith came to the meeting together. The testimony is that Smith introduced the defendant saying, This is "Mac" who just came up from the City to help distribute the junk. The testimony is, and I find that "junk" is a common synonym for heroin in New York City and Boston. The defendant Mr. Wiseman responds to the introduction, nodded, what the agent interprets as a silent acknowledgement of the introduction rather than a dispute of the substance of the introduction. The defendant then sat silently in a small booth through what the evidence indicates was the discussion of the sale of several ounces of heroin. There may also have been discussion of guns and money, large amounts of money at that meeting. But in some colloquial term, heroin was discussed.

Taking those circumstances, particularly the substance of the introduction, the fact that the word "junk" is a common synonym for heroin in New York City and Boston and the defendant's silent acknowledgement by nodding his head, I find that the defendant heard the introduction, that the defendant understood "junk" to mean heroin or some illegal drug, and the defendant acquiesced in the introduction and assented to the characterization of the purpose of his presence. I find that under these circumstances it would have been natural for an innocent person to object to the characterization of why he was there. The defendant failed to do that; therefore, the statement qualifies as an adoptive admission under rule 801(d)(2)(B) for the purpose of determining admissibility.

■ The district court correctly considered the relevant criteria, and we find no error in the district court's decision to admit this statement as an adoptive admission by appellant. There is no merit in appellant's argument that he might not have been able to understand English or failed to know the meaning of the word "junk." From other evidence, the court was well aware appellant could understand English; the fact that, when searched, he was carrying 27 packets of heroin was evidence, if any were needed, that he was no stranger to street jargon.

### III.

Appellant asserts that the district court erred in allowing into evidence out-of-court statements allegedly made by co-conspirator Smith. Statements made by a co-conspirator may be admitted if the government shows by a preponderance of the evidence "that the defendant and declarant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *United States v. Ciampaglia*, 628 F.2d 632, 637 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980); *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977).

■ In the present case, at the conclusion of all of the evidence the district court applied the test and found that the government had shown by a preponderance of the evidence that each statement made by Smith was made at a time when both Smith and appellant were members of a conspiracy. The court also found that the conspiracy was ongoing at the time each statement was made, and that each statement was made in furtherance of the conspiracy.

We have reviewed the evidence, and do not believe the district court was clearly erroneous. *See United States v. Patterson*, 644 F.2d 890, 894 (1st Cir.1981) (appellate court must accept district court's findings of fact in applying *Petrozziello* test unless clearly erroneous). The district court did not err in admitting the statements made by co-conspirator Smith to which the agent testified.

### IV.

■ Finally, we find no merit in appellant's assertion that there was insufficient evidence, as a matter of law, to establish defendant's guilt beyond a reasonable doubt. We find that the evidence (viewed in a light most favorable to the government) and all the legitimate inferences drawn therefrom, was more than ample to establish the essential elements of these crimes beyond a reasonable doubt. *See United States v. Samalot Perez*, 767 F.2d 1, 4 (1st Cir.1985); *United States v. Barrett*, 766 F.2d 609 (1st Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985); *United States v. Klein*, 522 F.2d, 296, 302 (1st Cir.1975).

*Affirmed.*