WILLIAM LANGTON vs. COMMISSIONER OF CORRECTION
& others.[1]

Plymouth. December 5, 1988. — February 16, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Imprisonment*, Enforcement of discipline.

Strip searches of a State prison inmate, not alleged to be conducted in an
    unreasonable or abusive manner, did not violate any rights guaranteed
    to him by the United States Constitution. [167-169]


CIVIL ACTION commenced in the Superior Court Department
on June 1, 1987.

The case was heard by *William H. Carey*, J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

The case was submitted on briefs.

*Nancy Ankers White*, Special Assistant Attorney General,
*& Richard C. McFarland* for the Commissioner of Correction
& others.

*William Langton*, pro se.

ABRAMS, J. On June 1, 1987, the plaintiff, William Langton,
brought this action pro se in the Superior Court. At the time
he filed his complaint, the plaintiff was incarcerated in the
Fort unit of the Southeastern Correctional Center, Bridgewater.
The plaintiff alleged that the defendants violated his rights by
subjecting him to routine strip searches. The plaintiff sought
declaratory, injunctive, and compensatory relief for the alleged
violations. On August 7, 1987, the plaintiff was transferred
out of the Fort unit and into the general prison population of

---

[1] Superintendent of Southeastern Correctional Center, Bridgewater; direc-
tor of security, Southeastern Correctional Center, Bridgewater; deputy
superintendent, Southeastern Correctional Center, Bridgewater.

the North Central Correctional Center, Gardner. In his order for judgment, the Superior Court judge declared that the plaintiff's Federal constitutional rights have not been violated and that, as a result, the plaintiff was not entitled to an injunction or compensatory or punitive damages. See *Arruda* v. *Fair*, 547 F. Supp. 1324 (D. Mass. 1982), aff'd, 710 F.2d 886 (1st Cir.), cert. denied, 464 U.S. 999 (1983). The plaintiff appeals. We transferred the case on our own motion.

The Fort is a maximum security housing unit within Bridgewater, a minimum security prison. The Fort is used for both disciplinary detention and administrative segregation. Under 103 Dept. of Correction Regs. 423.12, "[i]nmates housed in the Fort are subject to strip searches at any time. Each time an inmate enters the Fort or leaves the Fort he is to be searched by the designated officer." The inmate is searched inside his cell, in the presence of a single correction officer. No female correction officers are present in the area when an inmate is strip searched. The plaintiff has alleged that he was the subject of many strip searches conducted pursuant to the regulations when he returned to the Fort from visits to the law library, interviews with his attorney, and trips to the doctor.

The plaintiff's complaint alleges that the strip searches to which he was subjected "offend both the Massachusetts Constitution and the Constitution of the United States." He argues, however, only Federal constitutional issues and makes no separate argument to State constitutional law. We therefore do not reach or discuss any State constitutional claims.[2]

---

[2] The plaintiff does argue under State law that the defendants must comply with their own regulations. He goes on to quote, however, from the very regulations which authorize strip searches. See *supra*. Thus, while the plaintiff's statement of the law is correct, the essence of his complaint is that the defendants did comply with their own regulations.

The plaintiff also argues, briefly, that a Massachusetts statute precludes strip searches. In support of this proposition, he cites G. L. c. 127, § 32 (1986 ed.), which provides: "The superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry, and good conduct merit." Because the plaintiff argues only in a single, brief, conclusory paragraph, we deem the issue waived. Mass. R. A. P. 16 (a) (4), as amended, 367

The plaintiff asserts that, although he was confined to a maximum security area of the prison, he was classified as a medium security prisoner. He complains that he was searched each and every time he left and returned to his cell, regardless whether he had any contact with other inmates, outsiders, or anyone other than prison officials. He states that he was subjected to more than a thousand strip searches and never was found in possession of contraband. He also says that he never has been asked to submit to a drug test. The plaintiff contends that the strip searches were "instituted for one purpose and one purpose only, to harass and intimidate inmates."

The strip searches do not offend Federal constitutional law. In *Bell* v. *Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court upheld strip searches for all inmates following every contact visit with a person from outside the prison. "Prison administrators . . . [must] be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, *supra* at 547. When properly conducted, *id.* at 560, strip searches represent a reasonable precaution designed to ensure the security of a correctional institution against "[s]muggling of money, drugs, weapons, and other contraband." *Id.* at 559. Probable cause to suspect a particular inmate of smuggling is not necessary. *Id.* at 560. Nor does lack of contact with other inmates or outsiders obviate the need

---

Mass. 919 (1975). *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150-151 n.22 (1980), cert. denied, 451 U.S. 973 (1981).

After oral argument, the defendants filed a supplemental brief arguing broadly that the strip searches are permissible under State law. The plaintiff filed motions for extension of time and for leave to answer the defendants' supplemental brief and two motions to expand the record. This case was argued before the Superior Court judge, however, on the basis of Federal law only. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review." *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956), quoting *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). See *Baker* v. *Commercial Union Ins. Co.*, 382 Mass. 347, 349-350 n.5 (1981). We thus do not discuss the arguments made by the defendants in their supplemental brief. Further, we deny the plaintiff's motions.

for vigilance, given "the problem of prison employee involvement with contraband." *Arruda* v. *Fair*, 710 F.2d 886, 888 (1st Cir. 1983). The fact that the plaintiff has never been caught with any contraband "may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import [contraband] when the opportunity arises." *Bell* v. *Wolfish*, *supra* at 559.

The Supreme Court weighed prisoners' "diminished" Fourth Amendment rights, *id.* at 557, against the "significant and legitimate security interests of the institution" and held the latter to be the more weighty, as long as the searches are conducted in a reasonable and nonabusive manner. *Id.* at 560. The Supreme Court also had stated that strip searches, if reasonably conducted, do not violate the Fifth and Fourteenth Amendments or the Eighth Amendment. "[T]he determination whether these . . . practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id.* at 561. Strip searches have been held to be rationally related to the nonpunitive purpose of prison security and not excessive for that purpose. *Id.* at 561-562 (no violation of Fifth Amendment). *Arruda* v. *Fair*, 547 F. Supp. 1324, 1335 (D. Mass. 1982) (no violation of Eighth Amendment, applying same standard).[3] The plaintiff does not allege on the record before us that the strip searches were conducted in an unreasonable or abusive manner.

Although the judge in his order for judgment declared that the plaintiff's Federal constitutional rights had not been violated, that declaration is not in the judgment. See *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 418 (1976). The

---

[3] In his complaint, the plaintiff claims that "these searches have resulted in denial of access to the courts." The plaintiff does not argue this issue on appeal. An "appellate court need not pass upon questions or issues not argued in the brief." Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). *Commonwealth* v. *Cundriff, supra.*

judgment entered in Superior Court is vacated, and the case remanded for entry of a judgment declaring that the strip searches do not violate Federal constitutional law and that the plaintiff, therefore, is not entitled to injunctive relief or compensatory or punitive damages.

*So ordered.*