**Kelli J. SWAIN, Plaintiff,**

v.

**Laura SPINNEY, Edward Hayes and The Town of North Reading, Defendants.**

**Civil Action No. 95–10765–GAO.**

United States District Court,
D. Massachusetts.

July 5, 1996.

Michael E. Tyler, Topsfield, MA, for Kelli J. Swain.

Regina M. Gilgun, Douglas I. Louison, Merrick & Louison, Boston, MA, for Edward Hayes, Town of North Reading.

Regina M. Gilgun, Merrick & Louison, Boston, MA, for Laura Spinney.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

In this action, the plaintiff Kelli Swain asserts that the defendants Police Officer Laura Spinney and Lieutenant Edward Hayes violated her federal and state rights by conducting a strip search and visual body cavity examination of her following her arrest for shoplifting and possession of marijuana. Swain also claims that the Town of North Reading, the individual defendants' employer, had a policy of conscious indifference to the legal rights of those within its domain. All defendants have moved for summary judgment, and the Court now grants their motion.

Most of the facts of this case are undisputed.[1] On May 18, 1993, North Reading police responded to a call that Christopher Milbury had been shoplifting at Moynihan Lumber Company in North Reading. Officer Robert Marchionda located and followed Milbury's car, in which Milbury and Swain, who was Milbury's girlfriend, were driving. Officer Marchionda directed the car to pull over. After the car had stopped, Marchionda saw Swain get out of the passenger side, place her hands behind her back, and drop an item on the ground. Marchionda retrieved the

---

1. Where the parties are not in agreement, of course, Swain, as the non-moving party, is entitled to the familiar requirement that the Court review the record and draw all reasonable inferences therefrom in the light most favorable to her. *Commonwealth v. Blackstone Valley Elec. Co.,* 67 F.3d 981, 986 (1st Cir.1995).

item and discovered it to be a bag of marijuana. He then arrested both Milbury and Swain, placed them in his police cruiser, and transported them to the North Reading Police Station.

At the station, Swain was fingerprinted, photographed and asked to sign a card acknowledging that she had been advised of her rights. A routine inventory search of Swain revealed no stolen property or contraband, although police did find cigarette rolling papers in her pocketbook. Officer Spinney then placed Swain in a holding cell.

After Swain had been alone in her cell about twenty minutes, Lt. Hayes came to see her. According to Swain, Hayes tried to interrogate her about the incidents surrounding the arrest, even though he knew that Swain was already represented by counsel. Hayes' questioning led Swain to break down and cry, but she apparently did not answer his questions or give a statement. Hayes left her cell visibly angry. The interview lasted about fifteen minutes.

Shortly after Hayes' visit, Spinney reappeared and told Swain that she was under orders to subject Swain to a strip search. Both sides agree that Hayes, Spinney's superior officer, ordered the search. Spinney told Swain to remove her clothing, except for her brassiere. Having disrobed, Swain was instructed to bend deeply at the waist and spread her buttocks. Swain complied but did so reluctantly and tearfully. Swain was also afraid that, because of the presence of a video monitor in the cell, the whole search was being photographed. Spinney told her, however, that the camera was not turned on.[2]

Swain claims, under 42 U.S.C. § 1983 and Mass.Gen.L. ch. 12, §§ 11H, 11I, that the defendants violated her rights under the United States and Massachusetts constitutions by subjecting her to an unreasonable search. She seeks compensatory and punitive damages, as well as attorney's fees.

■ Insofar as Swain seeks to establish the search was unconstitutional under federal law, her argument seems foreclosed by the First Circuit's decision in *United States v. Klein*, 522 F.2d 296 (1st Cir.1975). In that case, Klein was arrested for selling cocaine. Following his arrest, he was taken to a federal building and ordered to strip. After stripping almost completely, Klein removed fourteen $100 bills—money that corresponded to funds federal agents had provided for a cocaine purchase—from his underwear. Klein then continued to strip. Once naked, Klein was instructed to bend over and was examined visually. The Court concluded that such a post-arrest search fell fully within the bounds of the Fourth Amendment.

The facts of *Klein* are similar enough to the present case to require a similar result. Here, a police officer witnessed Swain try to discard concealed contraband. After her arrest, police legitimately discovered rolling papers—useful for making marijuana cigarettes—in her pocketbook. A short time after she was place in the holding cell, she was searched in a professional manner. Such a search is not unconstitutional.[3] *See Id.* at 300.

Although *Klein* predates the premiere Supreme Court case on strip searches, *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), it remains valid First Circuit law. Moreover, the standards and method of analysis of *Wolfish*, to the extent they are at all different, dictate the same outcome. In *Wolfish*, the Supreme Court noted that

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

---

**2.** Swain offers no evidence that the camera was actually operating, and the defendants have denied that it was.

**3.** As in *Klein*, "[t]here was no piercing or probing of [Swain's] skin nor forced entry beyond the surface of h[er] body. There was not even any touching of h[er] body." *Klein*, 522 F.2d at 300.

441 U.S. at 559, 99 S.Ct. at 1884. The search in this case passes muster under that scrutiny. Swain had been arrested for possession of contraband, and the police were warranted in subjecting her person to a thorough search. The search itself was conducted out of public view in front of only one person of the same sex who, according to the plaintiff's own deposition testimony, acted in a fully professional manner. The search was done in connection with the placing of Swain into a detention facility. And, as noted earlier, Swain was never touched during this procedure, a fact that distinguishes this search from other, more invasive ones. *Cf. Blackburn v. Snow,* 771 F.2d 556, 565 n. 5 (1st Cir.1985).

■ In any event, the defendants are entitled to qualified immunity from Swain's lawsuit. A police officer has the benefit of qualified immunity unless the plaintiff can establish that the right she asserts was clearly established at the time of the alleged violation. *St. Hilaire v. City of Laconia,* 71 F.3d 20, 24–25 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). That is certainly not the case here. Swain did not have a clear right in the circumstances not to be subjected to a strip search. Rather, *Klein* stood (and stands) for the opposite proposition. *See also, Dobrowolskyj v. Jefferson County, Ky.,* 823 F.2d 955, 957–59 (6th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1012, 98 L.Ed.2d 978 (1988); *Dufrin v. Spreen,* 712 F.2d 1084, 1086–88 (6th Cir.1983). Swain plausibly asserts that Hayes may have had a malicious state of mind when he ordered the strip search and did so to punish her for refusing to answer his questions. Assuming in her favor that a jury could find those facts, they are nonetheless "insufficient to pierce ... [his] defense of qualified immunity." *Tauvar v. Bar Harbor Congregation,* 633 F.Supp. 741, 750 (D.Me.1985), *aff'd,* 787 F.2d 579 (1st Cir.1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987). Lt. Hayes's subjective purpose in ordering the suit is irrelevant given the objective standards of the qualified immunity inquiry. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *cf. Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ Turning to Swain's rights under Massachusetts law, Article 14 of the Massachusetts Declaration of Rights provides that "[e]very subject has a right to be secure from all unreasonable searches ... of his person...." Although Swain does not make an extended argument on this point, she seems to suggest that Article 14 requires substantially more of police officers in the context of a strip search than does the Fourth Amendment. That argument is unavailing. To be sure, the Supreme Judicial Court has ruled that a warrant authorizing the search of a body cavity shall be invalid "unless issued by the authority of a judge, on a strong showing of particularized need supported by a high degree of probable cause." *Rodriques v. Furtado,* 410 Mass. 878, 575 N.E.2d 1124, 1131 (1991). Indeed, *Rodriques* even questioned whether body cavity searches were completely precluded under Article 14, although it declined to reach the issue.[4] *Id.* 575 N.E.2d at 1129 n. 8. But the case also recognized that different considerations and interests apply once a person has been arrested and placed in custody. *Id.* 575 N.E.2d at 1128 n. 8. That different situation is the one involved here, and no other Massachusetts case suggests any divergence from comparable federal standards. *Cf. Langton v. Commissioner of Correction,* 404 Mass. 165, 533 N.E.2d 1375, 1376 (1989) (declining to address the standards for strip searches of prisoners under the Massachusetts Constitution). In the absence of any law specifying a different standard, the Court is inclined to assume the applicability of *Klein,* especially given *Rodriques'* overall reliance on federal case law. And even if Massachusetts did opt for a different standard, qualified immunity

---

4. *Rodriques* concerned the defendants' physical probing of a plaintiff's vagina in a search for cocaine. Without in any way diminishing the seriousness of the intrusion into Swain's privacy in this case, the *Rodriques* facts were clearly more egregious. The type of search *Rodriques* hinted might be entirely prohibited was the physical body-cavity search, not the visual search executed in the present case.

would necessarily attach here as well. *See Rodriques,* 575 N.E.2d at 1127.

■ Swain's case against the Town is even weaker. A municipality faces liability under § 1983 only where a violation results from the municipality's policy or custom. *Bordanaro v. McLeod,* 871 F.2d 1151, 1155 (1st Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). To be actionable, the policy or custom must either directly authorize and encourage the violation of a right or must permit it through "gross negligence amounting to deliberate indifference" to the right at issue. *Id; see also City of Canton v. Harris,* 489 U.S. 378, 389–90, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989).

■ Of course, Swain's argument fails at the outset because of the Court's determination that Hayes and Spinney violated none of her rights by respectively ordering and conducting the search. Even if her rights were violated by the individual defendants, Swain still cannot show why the Town should be held liable. Swain admits that North Reading's published policy regarding searches of arrestees was constitutionally adequate. Her claim thus depends largely on the failure of the Town to communicate the policy adequately to several of the officers involved in this case or to investigate Swain's charges sufficiently. But those alleged deficiencies, if true, simply do not establish that North Reading was deliberately indifferent to its citizens' constitutional rights. *Rodriques v. Furtado,* 950 F.2d 805, 813 (1st Cir.1991); *Burns v. Loranger,* 907 F.2d 233, 239 (1st Cir.1990); *Bordanaro,* 871 F.2d at 1156.

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

SO ORDERED.