UNITED STATES of America, Appellee,

v.

Dennis G. STANLEY,
Defendant, Appellant.

No. 90–1239.

United States Court of Appeals,
First Circuit.

Heard July 31, 1990.

Decided Oct. 4, 1990.

Charles P. McGinty, Federal Defender Office, for defendant, appellant.

Duane J. Deskins, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for U.S.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant Stanley appeals from his conviction in the district court. Stanley entered a conditional plea of guilty to a two count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and with possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). Having pleaded guilty, he reserved his right to appeal issues related to his initial stop and arrest on July 2, 1988. Stanley contends that the officers lacked the requisite articulable suspicion required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to justify the stop and that the scope of the officer's actions was not reasonable under the circumstances. Because the district court's fact-finding was not clearly erroneous and the record supports its conclusion that the officers' actions met the *Terry* standards, we affirm the conviction.

## BACKGROUND

On Saturday, July 2, 1988, Officers Barry D. Souza and Mark A. Delaney, undercover agents with the Barnstable Police Department, were on patrol in an unmarked cruiser in the town of Hyannis, Massachusetts. At approximately 12:15 a.m., they proceeded to a parking lot abut-

ting a free-standing bar. The parking lot is situated between the rear parking lot of a Sheraton Hotel and an auto parts store. Driving through the parking area, which was full of cars, Officer Souza noticed a grey Ford Thunderbird parked between two other cars. He observed the sole occupant, later identified as defendant Stanley, sitting in the driver's seat in a crouched position, "leaning towards the console, towards the passenger's seat, head down." Officer Souza also saw a faint light coming from the center console area of the vehicle. These observations, in addition to his knowledge that the area was a high-crime area, led Souza to suspect that the occupant of the car might be engaged in drug-related activity.

The detectives stopped their cruiser twenty feet behind and to the side of Stanley's car. As Officer Souza left the cruiser and approached the defendant's car, he saw the defendant turn his head towards the rear of the car and then lean towards the passenger seat. The officer suspected that Stanley had seen him approaching and was trying to hide narcotics. Officer Souza walked to the driver's side of the car and, while shining a flashlight on Stanley, shouted, "Police, freeze." The defendant recoiled from the officer and quickly reached back toward the passenger seat. Officer Souza testified later that he knew from experience that persons engaged in narcotics activities often carry firearms and that he feared that the defendant was attempting to reach one. When Stanley lunged to his right, Officer Souza opened the door on the driver's side and pulled defendant from the vehicle. As he did so, he saw a shotgun lying across the passenger seat.

After Stanley was secured, the officers noticed a red plastic cup of water positioned on the car's center console, and the protective cap of a hypodermic syringe needle on the passenger seat. They also found a folded paper containing a small amount of cocaine. Stanley was arrested for possession of a loaded sawed-off shotgun, drug paraphernalia and cocaine.

Stanley moved to suppress, as fruit of the allegedly unlawful search and seizure, the items seized from his person and motor vehicle by the arresting officers, as well as certain statements he made to them thereafter. The district court denied the motion.

## ANALYSIS

The constitutionality of the officers' stop and search must be evaluated according to the now familiar two-prong test articulated by the Supreme Court in *Terry v. Ohio.* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Determining that the Fourth Amendment regulates but does not prohibit temporary detentions that fall short of a full-scale arrest, the Court in *Terry* held that such encounters must be justified by reasonable suspicion proportional to the degree of intrusion. Thus, in reviewing the reasonableness of a *Terry* stop, the court must first consider whether the officer's action was justified at its inception; and, second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985) (quoting *Terry,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889). The circumstances "are not to be dissected and viewed singly; rather they must be considered as a whole." *United States v. Trullo,* 809 F.2d 108, 111 (1st Cir.), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987).

### A. *The Original Investigation.*

Before applying the two-prong *Terry* test, we must first determine the point at which the conduct of Officer Souza became an intrusive stop and search, implicating the protections of the Fourth Amendment. The Fourth Amendment, of course, does not prevent police from engaging in investigatory activities, including observations of individuals that stop short of a search or seizure. Without implicating the protections of the Fourth Amendment, Officers Souza and Delaney could patrol the parking lot, observe the defendant's behavior from inside or outside their cruiser, and

leave their cruiser to approach Stanley. Not until they restricted Stanley's freedom did the officers' conduct amount to a constitutionally cognizable "stop." Until Officer Souza identified himself as a police officer and ordered Stanley to "freeze," Stanley was not prevented from leaving his car and walking away from the officers or leaving the parking lot in his car. Thus, we agree with the district court that the relevant point for the purposes of the *Terry* analysis is the moment at which the police ordered Stanley to "freeze." Until then, no conduct regulated by the Fourth Amendment had occurred.

## B. *The Stop and Search.*

We have recognized that a determination of whether the police action "was justified at its inception depends on the totality of the circumstances confronting the officer." *Trullo*, 809 F.2d at 111. In evaluating these circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch', but to the specific reasonable inferences which he is entitled to draw from the facts *in light of his experience.*" *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883 (emphasis supplied); *see also United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1985).

The district court found that Officer Souza's suspicion was reasonable, based on the location and the defendant's conduct both before and after the officers approached his car. Specifically, the court found that "the officer's observations of defendant's conduct and the faint light in the car did, in view of his experience in law enforcement in general and with drug investigation in particular, give credence to his suspicion that defendant was engaged in a drug-related activity, warranting investigation." *Memorandum of Decision* at 5. We now review each of these factors.

 Location by itself is ordinarily insufficient to justify a stop; however, "officers may consider the characteristics of the area in which they encounter a vehicle." *Trullo*, 809 F.2d at 111 (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975)).

The district court found that Stanley was parked in an area known to the officers as one frequently used for illegal drug activities. Although the officers would not have been justified in stopping Stanley based merely on his presence in the parking lot, the reputation of the area for narcotics transactions was an appropriate factor in determining the reasonableness of an investigatory stop.

A second articulable factor is the conduct of defendant, considered in light of the officer's experience in law enforcement and in drug investigations in particular. The officers noticed defendant alone in his car, just after midnight, leaning over the center console which was slightly illuminated. He was apparently engaged in some purposeful activity which, under the circumstances, and given their experience, the officers suspected was drug-related. Their suspicions aroused, the officers approached the defendant's car. Stanley, upon seeing Souza, moved as though he were hiding something under the seat. This movement served to reinforce the officers' suspicion of drug-related activity. *See United States v. Gilliard*, 847 F.2d 21, 25 (1st Cir.1988) (defendant's nervous behavior contributed to officer's legitimate concern for his safety); *United States v. Denney*, 771 F.2d 318, 322 (7th Cir.1985) (furtive movement or leaning towards right side of vehicle was reasonably interpreted by officer as reaching for a weapon). Souza then shouted, "Police, freeze," thus imposing, for the first time, a restriction on defendant's freedom—the so-called *Terry* stop.

Although the defendant's actions might have seemed unremarkable to other passersby, "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Bernard*, 623 F.2d 551, 560 (9th Cir.1979). Thus, the circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). Officer Souza had been with the Barnstable Police Department for approximately nine

years, and had participated in approximately twenty investigations and arrests in the Hyannis area involving narcotics and firearms violations. Considering the totality of the circumstances, we give weight to the officer's trained eye and judgment. We conclude on these facts that the district court had sufficient basis to determine that the investigatory stop, commencing with the shouting of "Police, freeze," was justified at its inception.

Appellant's argument that "[t]oo many alternative explanations, all of them innocent, exist which could explain [Stanley's behavior]," Brief of Appellant at 6, is misguided. We have noted that " '[i]t must be rare indeed that an officer observes behavior consistent only with guilt and incapable of innocent interpretation.' " *United States v. Viegas*, 639 F.2d 42, 45 (1st Cir.), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981) (quoting *United States v. Price*, 599 F.2d 494, 502 (2d Cir. 1979)). Under *Terry*, the test is whether the circumstances give rise to a reasonable suspicion of criminal activity, not whether the defendant's actions are subject to no reasonable innocent explanation. *See Trullo*, 809 F.2d at 112. And we must honor the district judge's findings as to the inference most plausibly to be drawn from the facts and circumstances as adduced at the suppression hearing, unless those findings are clearly erroneous. *See, e.g., United States v. Figueroa*, 818 F.2d 1020, 1024 (1st Cir.1987); *United States v. Wiseman*, 814 F.2d 826, 827–28 (1st Cir.1987).

### C. *The Scope of the Search.*

Having determined that the investigatory stop was reasonable, we address the second but related inquiry under *Terry*, whether the action taken by the officer was reasonably related in scope to the circumstances precipitating the stop. In situations such as this, the officer's concern for his own safety and for the safety of others is a legitimate factor in assessing the appropriateness of the action taken. When the officer has a reasonable belief "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881.

Based on his suspicion of drug-related activities and his knowledge that individuals engaged in such activity often carry firearms, Officer Souza reasonably concluded that Stanley may have been armed. Given his concern for his own safety, Souza's order to freeze was reasonable under the *Terry* standard. Stanley, however, ignored the order and lunged toward the passenger's side of the car. This sudden action provided Souza with justification for what followed. Fearing that Stanley was reaching for a weapon, Souza took action to protect himself and his fellow officer by removing Stanley from the car. We find that the officer's actions in this case were reasonably related in scope to the circumstances that justified the original stop and therefore did not violate the defendant's Fourth Amendment rights. *Cf. United States v. Merritt*, 695 F.2d 1263 (10th Cir. 1986) (based on a reasonable belief that the suspects were armed, police were justified in ordering suspects to freeze and then holding them at gunpoint).

### CONCLUSION

Considering the totality of the circumstances and taking into account the experience of the police officers and their knowledge of the locale, we conclude that the district court did not err in determining that Officer Souza's investigatory stop of defendant Stanley was justified and that the scope of the actions taken by the officers was reasonably related to the circumstances that originally justified the stop.

*The judgment of the district court is therefore affirmed.*