21 F.3d 420
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
George E. LOTT, Defendant, Appellant.
 No. 93-1191
 March 25, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. William G. Young, U.S. District Judge ]
 Kevin S. Nixon for defendant, appellant.
 James D. Herbert, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Despena Fillios Billings, Assistant United States Attorney, were on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Selya, Circuit Judge, Bownes, Senior Circuit Judge, and Stahl, Circuit Judge.
 BOWNES, Senior Circuit Judge.
 
 
 1
 Defendant was apprehended in a taxicab after robbing a bank. After a two-count indictment was returned charging defendant with armed bank robbery, he moved to suppress all evidence obtained as a result of the stop and search of the taxicab in which he was a passenger at the time of his arrest. The district court held a hearing on the motion and denied it, making bench findings and rulings. The next day defendant offered conditional guilty pleas to both counts of the indictment, reserving the right to appeal from the denial of the motion to suppress. The court accepted the guilty pleas and sentenced defendant to 180 months of incarceration to be followed by 36 months of supervised release. Defendant's claim on appeal is that the evidence failed to establish reasonable suspicion for the stop and search of the taxi.
 
 THE EVIDENCE
 
 2
 Our evidentiary review begins during the afternoon of September 19, 1991, in Robert's Bakery in Needham, Massachusetts. The weather was overcast, threatening rain. The owner of the bakery, Robert DiMarino, Jr., was in the back room when his attention was drawn to a man on the sidewalk shouting through the window at Marino's mother who was in the customer area of the restaurant. Marino inquired as to what was going on and she told him that the man wanted her to call a taxi for him. Marino told his mother to make the call. She called Veteran's Taxi Company in Needham and was asked by the dispatcher the passenger's destination. She repeated the question to the man and was told that he wanted to go to Newton Center.
 
 
 3
 After the call was completed, it started to rain and the man who had requested the taxi came into the bakery to wait for it. He was a tall, thin black male wearing jeans, a brown striped pullover and an oversized black and white knit cap. Within a few minutes a Veteran's taxicab arrived to pick up the man. He came out of the bakery and asked the cab driver if he would wait a few minutes so he could find out if his wife was going to accompany him to Newton Center. He then left the area.
 
 
 4
 Within a very short time, a man walked into the Needham Cooperative Bank. The bank is located down the street and around the corner from Robert's Bakery. He went directly to teller stations two and three in the bank and after a short conversation with the tellers proceeded to scoop money out of the cash drawers. Surveillance photos show him doing this. The assistant manager observed the robber as did a young woman, Yvonne Welch, who was standing next to him. During the robbery, the robber wore a ski mask.
 
 
 5
 While the robbery was proceeding, an officer of the bank, Mr. McGeorge, was on the phone talking to his wife. He told her that the bank was being robbed and asked her to call the police. Three other bank employees called the police to report a robbery in progress. In at least one of the calls the robber was described as a tall, thin black man wearing a brown sweater and blue jeans with his face covered by a ski mask. The Needham Police dispatcher radioed to all units in Needham that an armed robbery was in progress at the Needham Cooperative Bank involving a black male wearing a striped brown sweater.
 
 
 6
 The robber left the bank on foot. He was followed by the bank officer, McGeorge, through a parking lot leading to the street on which the taxi was parked. The robber either fortuitously or purposely eluded McGeorge. McGeorge, however, got close enough to see the robber's face, the ski mask having been removed. About ten minutes after the robbery, the man who had called for the taxi, signalled the taxi which had been waiting for him. He got into the taxi, told the driver that his wife was not coming with him, that he felt ill and was going to lie down on the back seat, which he did.
 
 
 7
 Our exposition now brings us back to Robert's Bakery. Within moments of the robbery, or during it, Needham Police Officer Arthur Douglas walked into the bakery. He was known to the proprietor, who told him about his mother's call for a taxi for a man and the conversation between his mother and the man requesting the call. As Douglas was going into the rear of the store for tea and a pastry, he heard on his portable radio that there was a robbery at the Needham Bank. Douglas immediately ran to the bank, obtained a description of the robber and then ran back to the bakery to get a description of the man who had used the proprietor's mother to call a taxi. Both descriptions dovetailed. Douglas also learned that the taxi's destination was Newton Center. Douglas then radioed to Newton Police Sergeant Albert Droney, gave him a description of the bank robber, and told him that the bank robber was in a red Veteran's cab headed to Newton Center. Droney, in turn, called the Newton Police dispatcher, gave him a description of the bank robber, told him to give this information to the Newton Police and to tell them that the robber was in a red Veteran's taxicab heading down Highland Avenue in Needham towards Newton.
 
 
 8
 Newton Police Officer David Richard was sitting in his cruiser on Center Street in Newton, which is a continuation of Highland Avenue, when the Newton Police broadcast the robbery information. Immediately after hearing the broadcast, Richard saw and stopped the taxi. The robber was found on the rear floor of the taxi on top of his beret, which contained the money stolen from the bank. The Needham Police subsequently arrived with witnesses to the robbery who unhesitatingly identified defendant as the bank robber. This ends our recitation of the relevant facts.
 
 
 9
 There is, however, a humorous episode that bears re-telling. During the time that the information about the bank robber travelling in a Veteran's cab to Newton Center was being broadcast, another Veteran's cab was travelling from Needham Junction to Needham Heights. It was carrying as passengers two Amtrak engineers. As the cab approached a traffic light intersection, the light turned yellow. The driver, neverthe- less, proceeded through the intersection. As he did so, one of the passengers informed him that a police cruiser with its blue lights flashing was following them. The driver pulled the cab over to the side of the road. The cruiser came alongside and police officers jumped out with weapons drawn. The driver got out of his cab with his hands raised and said, "I'll never go through a red light again."
 
 DISCUSSION
 
 10
 There is no need to tarry long on the analysis required. It is familiar terrain.
 
 
 11
 The constitutionality of the officers' stop and search must be evaluated according to the now familiar two-prong test articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Determining that the Fourth Amendment regulates but does not prohibit temporary detentions that fall short of a full-scale arrest, the Court in Terry held that such encounters must be justified by reasonable suspicion proportional to the degree of intrusion. Thus, in reviewing the reasonableness of a Terry stop, the court must first consider whether the officer's action was justified at its inception; and, second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place. United States v. Sharpe, 470 U.S. 675,
 
 
 12
 682, 105 S.Ct. 1568, 1573, 94 L.Ed.2d 605 (1985) (quoting Terry, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889). The circumstances "are not to be dissected and viewed singly; rather they must be considered as a whole." United States v. Trullo, 809 F.2d 108, 111 (1st Cir.), cert. denied, 482 U.S. 916, 107 S.Ct. 3191, 196 L.Ed.2d 679 (1987).
 
 
 13
 United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990). Defendant's argument boils down to this:
 
 
 14
 Because the Needham police officer who issued the radio bulletin lacked a reasonable suspicion concerning the taxicab stopped in Newton, and because Officer Richard had insufficient information to justify stopping the taxi, the District Court erred when it denied the motion to suppress.
 
 
 15
 Defendant's Brief at 14. The facts establish the contrary. The Needham police officer who issued the radio bulletin had been given a description of the bank robber by a fellow police officer. This officer had obtained the description from eye witnesses to the robbery. The same officer (Douglas) determined that this description matched that of the man who had used the clerk in Robert's Bakery (the mother of the proprietor) to obtain a taxi. It did not take a Sherlock Holmes to deduce that the bank robber and the man who requested the taxi were one and the same. It was more than a reasonable suspicion; it was a perfectly logical deduction. The bank robber had told the woman who made the taxi call for him that his destination was Newton Center. This information was also given to the Needham police dispatcher who passed it along to the Newton Police. The Newton Police Officer who saw and stopped the taxi containing the robber had been informed that the robber was in a red Veteran's taxicab which was proceeding to Newton Center from Needham. The cab he stopped and searched was of the type described, and was proceeding from Needham to Newton Center. On the basis of the information he had, his duty was clear: stop the cab and check its passenger. No amount of forensic skill can erase the clear reasonable suspicion that resulted in the stop and search of the taxi in which defendant hoped to make his getaway.
 
 
 16
 Although the facts of this case are unique, the application of the law to the facts dictate that the judgment below be
 
 
 17
 Affirmed.