<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-2167     

                         UNITED STATES,

                           Appellee,

                               v.

                          JAMES CRUZ,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

            [Hon. Gene Carter, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Selya, Circuit Judge,

and Schwarzer, Senior District Judge.

                     _____________________

    Henry W. Griffin, by appointment of the Court, for appellant.
    Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, and George T.
Dilworth, Assistant United States Attorney, were on brief, for
appellee.

                      ____________________

                       August 17, 1998
                      ____________________
         TORRUELLA, Chief Judge.  Appellant was charged, tried and
convicted by a jury pursuant to allegations contained in a multiple
count indictment in which the government claimed that he conspired
to distribute a controlled substance in violation of 21 U.S.C.
841 and 846, and engaged in violations of 18 U.S.C.
922(g)(1), 922(g)(3), 924(c)(1), 924(e)(1), and 26 U.S.C.
5841, 5861(d), and 5871, which all deal with the felonious
possession of firearms in various circumstances.  Thereafter, he
was sentenced to imprisonment for 420 months to be followed by 8
years of supervised release.
         Five issues are raised on appeal: (1) the legality of the
search that led to the charges for which appellant was prosecuted
and convicted; (2) the sufficiency of the evidence presented to
establish proof beyond a reasonable doubt (and thus the validity of
the district court's ruling denying appellant's motion for judgment
of acquittal); (3) the district court's failure to declare a
mistrial upon appellant's motion after alleged juror misconduct was
called to the court's attention; (4) whether the district court's
instructions to the jury regarding the government's allegedly
improper statements in its closing argument were sufficient to
avoid the need for a new trial; and (5) whether appellant was
properly sentenced as an "armed career criminal."  These issues
will be discussed seriatim.  In a separate brief, appellant
challenges pro se the admission of certain evidence as well as
certain remarks made by the government in its opening statement.  
We address these pro se arguments at the end of the opinion.  
Ultimately, we affirm the rulings of the district court.
I.  The Motion To Suppress
         A.  The facts
         At approximately 1:22 a.m. on August 23, 1996, appellant
was detained by a state policeman for driving at 88 mph, which is
in excess of the legal speed limit of 65 mph for the Maine
Turnpike. As the officer approached appellant's vehicle, he
observed a commotion among the occupants.  There were three young
males in the back seat, an adult female in front next to the
driver, and an adult male driver.  The officer asked the driver,
who turned out to be appellant, to step outside the vehicle and to
produce his driver's license, vehicle registration and insurance
documentation.  While this was taking place, the officer noticed
that appellant's shirt was untucked, whereupon he asked appellant
to lift his shirt so that his waistband was exposed.  Nothing
unusual was revealed.
         The officer then conducted a patdown search of appellant,
during the course of which he discovered a jackknife and a syringe
and needle in his pants pockets.  Appellant was placed under arrest
for possession of illegal drug paraphernalia.
    After appellant was arrested, the officer proceeded to
search the other occupants of the car.  The sum of $5,000 cash was
discovered in the purse of the female passenger, who was later
identified as appellant's then-girlfriend Ericka Thibodeau, and a
9-mm pistol was recovered from her person.  Thereafter, the officer
found an ammunition magazine for the pistol on the floor of the car
between the front and back seats.  An additional magazine and three
loose rounds were later found on the floor of the officer's car,
directly behind where appellant had been placed after his arrest.  
Two rounds of 9-mm ammunition were also found tucked between the
cushions of the seat that appellant had occupied.
    B.   Was the pat-down of appellant a permissible Terry      stop and frisk?

    Appellant questions the validity of his frisk by the
Maine officer as being beyond the scope permitted by Terry v. Ohio,
392 U.S. 1 (1968), and seeks the suppression of all evidence
discovered, claiming it is "fruit of the poisonous tree."  Wong Sunv. United States, 371 U.S. 471, 485-86 (1963).  In this respect it
is important to keep in mind that the district court's findings of
fact are reviewable only for clear error, although its legal
conclusions receive de novo treatment.  See Ornelas v. United
States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996).
    Because appellant concedes that Terry permits the police
to stop a person to investigate upon a reasonable suspicion that a
crime has been committed, and because appellant does not contest
the fact that he was violating the speed limit when he was stopped,
our inquiry is narrow in scope.  Was appellant's search after the
legitimate stop reasonable under the circumstances?  
    We first look to whether the officer acted properly in
ordering appellant to step outside his vehicle upon being stopped.  
The district court in effect concluded that the officer's
suspicions were justifiably heightened, not only by the abrupt
manner in which appellant's vehicle pulled over and came to a stop,
but "by the exaggerated level of movement of the occupants of the
car as it came to a stop, particularly those of the passenger in
the right front seat."  Given these findings, which are fully
supported by the record, the officer's request that appellant step
outside his automobile was justified.  See Maryland v. Wilson, 519
U.S. 408, __, 117 S. Ct. 882, 885 (1997) (noting that, once vehicle
lawfully stopped for traffic violation, constitutionally
permissible for officer to order driver to get out of vehicle).
    The next and final step of this inquiry is whether
appellant's frisk, which provided the immediate cause for his
arrest and which uncovered some of the incriminating evidence for
which he was charged and convicted, was appropriate under Terry.
    This step need not detain us long.  Analyzing the
propriety of a frisk involves a two-part inquiry, in which no
single factor is controlling: "first . . . [one must determine]
whether the officer's action was justified at its inception, and
second, whether the action taken was reasonably related in scope to
the circumstances which justified the interference in the first
place."  United States v. Walker, 924 F.2d 1, 3 (1st Cir. 1991)
(quoting United States v. Stanley, 915 F.2d 54, 55 (1st Cir.
1990)).  The court must consider the circumstances as a whole, and
must balance the nature of the intrusion with the governmental
interests that are served.  United States v. Hensley, 469 U.S. 221,
228 (1985).
    The circumstances of this stop are such that the officer
would have been "foolhardy" not to have frisked appellant for
weapons.  See Walker, 924 F.2d at 4.  In particular, the time of
day and location of the incident, the excessive speed at which the
vehicle was driven, the manner in which it came to a stop, and the
unexplained commotion among its occupants who outnumbered the
police officer five to one, was sufficient cause to conduct the
initial limited patdown of appellant's front pants pockets, in
which contraband was in fact discovered.  What followed has been
fully recounted and need not be repeated, but was certainly not
"poisoned fruit."
    "The Fourth Amendment by its terms prohibits
'unreasonable' searches and seizures."  New York v. Class, 475 U.S.
106, 116 (1986).  The stop and ensuing search were reasonable under
the circumstances and thus the ruling of the district court denying
suppression of the evidence is affirmed.
II.  The Sufficiency of the Evidence
    In considering a motion for judgment of acquittal, both
the trial and reviewing courts must evaluate the evidence and such
reasonable inferences as arise therefrom in the light most
favorable to the government.  United States v. Loder, 23 F. 3d 586,
589 (1st Cir. 1994).
    Appellant's arguments go principally to the credibility
of various government witnesses, and are thus in large measure
addressed to the wrong forum.  See United States v. Meader, 118
F.3d 876, 881 (1st Cir. 1997) (finding credibility assessments to
be uniquely the domain of the jury).
    A.  18 U.S.C.  924(c)(1)
    Count VII of the indictment charges appellant with using
and carrying a firearm in violation of 18 U.S.C.  924(c)(1). Since
this relates to the use or carrying of a firearm during and in
relation to the drug crime alleged in Count I, we must look first
to the government's proof in that respect.  
    In Count I of the indictment, appellant was charged with
engaging in a conspiracy to distribute cocaine base in violation of
21 U.S.C.  841(a)(1) and 846.  At least 8 witnesses testified
that throughout the summer of 1996, they and others purchased crack
cocaine from appellant.  Each of these witnesses corroborated the
other seven, and their testimony was also confirmed by the
introduction of evidence seized from appellant's premises, which
included cash, drugs, and drug paraphernalia.  Viewing this
evidence and all reasonable inferences that may be drawn therefrom
in the light most favorable to the government, we find that there
was enough evidence to allow a reasonable jury to convict on Count
I.
    Turning to the proof regarding Count VII, the evidence is
equally overwhelming that appellant carried the 9-mm pistol that
was introduced into evidence during the various phases of his drug
deals, including during purchases, transportation, and, most bone-
chillingly described by several witnesses, during drug-debt-
collection episodes.  Count VII was well proven.
    B.  18 U.S.C.  922(g)(1) and 924(e)(1)
    The above evidence is also relevant to the Count VIII
charge which alleges his condition as a felon in possession with
respect to the 9-mm pistol.  There is no question that appellant
was a three-time felon, and that he was in possession of a firearm.  
Thus, Count VIII was established.
    This evidence is equally applicable to Count IX, with the
slight variation that appellant is charged there with knowing
possession of the seven rounds of 9-mm ammunition discovered in
various places where he had passed through during his travails.  
Appellant's disavowals as to this evidence were appropriately
brought to the attention of the jurors, who were entitled to give
his contention the weight that they considered it deserved.  We see
no reason to disturb their conclusion.
    C.  The sawed-off shotgun
    Count X is again a variation of the prior felon-in-
possession theme, this one involving a sawed-off shotgun.  
Witnesses testified that the shotgun was purchased and paid for at
appellant's behest, and that thereafter he took possession of this
weapon.  Appellant was a felon and he was in possession of a
firearm -- end of matter.
    In Count XI, appellant was charged with possessing an
unregistered sawed-off shotgun in violation of 26 U.S.C.  5841,
5861, and 5871.  A witness testified to helping appellant to saw
the barrel off the shotgun referred to in Count X, which in fact he
thereafter used to terrorize this same witness.  This weapon was
less than 26 "overall, with a barrel shorter than 18," and was not
registered in appellant's name in the National Firearms
Registration and Transfer Record.  Nothing further need be proven
to establish the violations charged in Count XI of the indictment.
    Lastly, Count XII which charges appellant, an illegal
drug user, with possession of the shotgun in contravention to 18
U.S.C.  922(g)(3) and 924(e)(1), was also clearly established
beyond a reasonable doubt.
III.  Alleged juror misconduct and denial of mistrial motion
    "When a non-frivolous suggestion is made that a jury may
be biased or tainted by some incident, the district court must
undertake an adequate inquiry to determine whether the alleged
incident occurred and if so, whether it was prejudicial."  UnitedStates v. Barone, 114 F.3d 1284, 1306 (1st Cir. 1997) (quoting
United States v. Ortiz-Arrigoita, 996 F.2d 436, 442 (1st Cir.
1993)).  The trial judge is "vested with the discretion to fashion
an appropriate and responsible procedure to determine whether
misconduct actually occurred and whether it was prejudicial."  
Ortiz-Arrigoita, 996 F.2d at 442.  A district court has wide
latitude in responding to such a claim, Meader, 118 F.3d at 880,
and thus, the course of inquiry that is selected is reviewable only
for patent abuse of discretion.  United States v. Boylan, 898 F.2d
230, 258 (1st Cir. 1990).
    During a recess in the trial of this case, court
personnel overheard three jurors discussing some of the evidence
against appellant, conduct which was contrary to instructions
previously given by the district judge to the jury.  This
information was made known to the trial judge, who promptly
communicated the incident to trial counsel, requesting their views
as to how to proceed.  Appellant was of the view that only a
mistrial was sufficient to correct the situation.  The trial court
opined that further inquiry was required before such a drastic
measure would be taken, and decided instead to summarily excuse the
three jurors involved, preventing any further contact between them
and the other jurors, and investigate whether any of the remaining
jurors had been contaminated.
    In the presence of counsel, the trial judge separately
examined two of the remaining jurors who were physically in the
vicinity of the offending jurors and might have overheard their
conversation.  Upon being questioned, they denied any knowledge of
the incident.  Thereafter, the court summoned the remaining jurors
as a group, admonished them to be candid, and explained to them
what had happened regarding the excused jurors.  He then asked the
assembled jurors whether any of them had overheard the three jurors
talking, whether they had heard any talk about the shotgun which
was the subject of the transgressing jurors' conversation, and
finally, whether any of them had made up their minds about the
case.  No juror responded in the affirmative to any of these
questions.  Thereafter, the court denied appellant's motion for
mistrial and properly corrected any possible damage to the
integrity of the trial.
    Given the circumstances we have described, we are of the
view that the trial judge acted well within his discretion in
denying a mistrial.
IV.  Alleged Prosecutorial Misconduct During Closing Argument
    Appellant did not give up his quest for a new trial.  
During the course of closing argument, counsel for appellant
likened the government's witnesses to individuals who were trying
to outrun the appellant while all were running from the federal
government, which was portrayed as a voracious bear.  In his
rebuttal, government counsel responded to this allegory with his
own version of what was going on, stating that "the man that [was]
trying to outrun the bear is [appellant]" in contrast to other
persons, which he named individually, who had "been caught by the
bear and [had] accepted responsibility."  The government went on to
ask rhetorically, "Who is the man that is running?"
    Shortly after these statements were made, the government
ended its rebuttal and the trial judge called a recess prior to
charging the jury.  At that point, defense counsel challenged the
propriety of these remarks as disparaging appellant's exercise of
his constitutional right to a trial, and requested that a mistrial
be declared.  The district court denied appellant's petition,
ruling that the objection was tardy in that it is "incumbent upon
counsel when there is improper argument immediately to cut it off
and to give the judge a chance to address it right there and that
was not done. . . ."  In view of this ruling, appellant's counsel
stated that, "[i]n the alternative [he] would ask for some sort of
instruction . . . that says, I think you may have instructed this
already, a person accused of a crime has a constitutional right to
a trial."  The trial judge responded that he would "give that
instruction again as part of the proposed speaking draft of the
instructions," to which defense counsel once more stated:
    COUNSEL:  That would be what I would request
    simply to reiterate that a defendant has a
    constitutional right to a trial.  Could there
    be something like no adverse inference can be
    drawn from the fact that a defendant exercised
    his constitutional right?
     
    THE COURT:  Yes, I'll say something.

    COUNSEL:  Do you want me to draft it or simply
    rely on the Court?

    THE COURT: I will draft it. Listen carefully.  
    If you don't like it, you will have a chance
    to object.

The trial judge, at the appropriate time, proceeded to give the
appropriate instructions, at which point he allowed all counsel the
opportunity to object to the instructions given or to request
further instructions.  No such thing happened.  See United Statesv. Mendoza-Acevedo, 950 F.2d 1, 4 (1st Cir. 1991) (noting that
failure to renew objections after charge constitutes waiver of any
claim of error).
    There should be little doubt that appellant's claim of
error is not well taken.  To begin with, the trial judge was
correct in ruling that a timely objection was not made.  In this
day and age we need not elaborate at length as to the consequences
of such a failure.  Suffice it to say that it constitutes a waiver
of rights unless the error committed and not objected to is of such
a  magnitude as to have "so poisoned the well that the trial's
outcome was likely affected."  United States v. Meja-Lozano, 829
F.2d 268, 274 (1st Cir. 1987).  Of course, no such thing has taken
place here.  The weight and quantity of the evidence against
appellant was nothing short of overwhelming, which places any
hypothetical error committed in this respect in the "harmless"
category.  United States v. Taylor, 54 F.3d 967, 977 (1st Cir.
1995).     
    To this we should add that the district court found, and
the record supports, that the allegedly inappropriate comments by
government counsel were not deliberate.  We have uncovered nothing
that would lead us to conclude that this was anything but an
isolated slip.  Id.  Lastly, the aforementioned exchange between
appellant's counsel and the district judge leave us with the clear
conviction that the proposed solution not only was accepted, but
effectively protected appellant's rights.  Id.
    Any error that may have occurred was harmless beyond a
reasonable doubt.  See United States v. Hastings, 461 U.S. 499, 508
(1983) ("harmless error rule governs even constitutional violations
under some circumstances").
V.  Alleged Sentencing Errors
    Under Guideline section 4B1.4, "[t]he offense level for
an armed career criminal is the greatest of" three options.  The
first is the offense level that results from ordinary Guidelines
computations.  The second option is "the offense level from  4B1.1
[Career Offender], if applicable . . . ."  See U.S.S.G.  4(b)(2).  
The third alternative sets the offense level at 34 if the defendant
used a firearm in the commission of a drug or violent crime, or
possessed a sawed-off shotgun.  See U.S.S.G.  4B1.4(b)(3)(A).
    Appellant claims that the trial court committed five
errors in imposing the sentence from which he appeals.  Four of
these challenges are ultimately mooted by our affirmance of his
Armed Career Criminal status.  The four include attacks on the
enhancements under U.S.S.G.  2D1.1(b)(1), 2K2.1(b)(5), and 3A1.3
based on the quantity of the drugs.  In addition, appellant
challenges his Armed Career Criminal status on the ground that one
of the predicate offenses was a conviction for an attempted
criminal drug sale and, as an attempt, does not meet the definition
of a "controlled substance offense" under U.S.S.G.  4B1.2.  
Application Note 1, however, specifically includes in "controlled
substance offense" the offense of attempting to commit such
offense.
    Because appellant qualified as an Armed Career Criminal
under  4B1.1, his offense level was geared to the statutory
maximum for the offense of the conviction.  In the present case,
once appellant's enhancing information was filed as required by 21
U.S.C.  851, the maximum sentence for his offense became life
imprisonment, which has a minimum offense level of 37.  The
district court having correctly sentenced appellant based upon an
adjusted total offense level of 37, we need not consider
appellant's other challenges of his sentence.
VI.  Appellant's Pro Se Arguments
    Appellant contends that the district court erred in
allowing the testimony of Susan Cronin, whom the government failed
to include on its initial witness list.  Prior to trial, the court
attributed the government's omission to "inadvertence," but agreed
to allow Cronin to testify as long as none of the jurors knew or
had heard of her.  Appellant's counsel did not object to this
approach either when it was proposed, or at the time the trial
judge asked the jurors whether they knew Cronin.  We note that
"[e]ven when the government has produced a witness list . . . in
advance, when a witness . . . not previously listed is offered, the
decision to admit the testimony . . . is within the discretion of
the trial judge."  See United States v. Reis, 788 F.2d 54, 58 (1st
Cir. 1986).
    It was well within the district court judge's discretion
to allow Cronin to testify.  Nothing in the record suggests that
appellant was prejudiced by the government's failure to include
Cronin's name on the initial witness list.  Since no member of the
jury had heard of Cronin prior to trial, the integrity of the jury
remained intact.  Furthermore, appellant had sufficient time to
prepare for Cronin's testimony because she did not testify
immediately after being offered as a potential witness, but rather,
later in the trial, as the government's ninth witness.
    Appellant also objects to the substance of Cronin's
testimony, which helped authenticate photographs of bruises
inflicted on Ericka Thibodeau by appellant on September 4, 1996.  
Appellant avers that, under Fed. R. Evid. 403, the prejudicial
impact of the photographs far outweighed their probative value.  On
appeal, we afford a district court's Rule 403 balancing substantial
discretion.  See United States v. Lowe, 145 F.3d 45, 51 (1st Cir.
1998).  The district court allowed the photographs into evidence as
probative of Thibodeau's credibility.  The trial judge, after due
consideration of the photographs' potential prejudicial impact,
determined that while the photographs were "unpleasant," they were
not "gruesome."  Accordingly, the trial judge concluded "[t]here is
nothing prejudicial about the jury being able to see by way of
corroboration of [Thibodeau's] testimony what it is that
[appellant] did to her."  Finding no abuse of discretion, we
decline to disturb the district court's ruling on the admissibility
of the photographic evidence.
    Appellant contests the admission of Thibodeau's
statements to Cronin as excited utterances under Fed. R. Evid. 803.  
Rule 803(2) allows the admission of hearsay, even though the
declarant is available as a witness, if the statement is one
"relating to a startling event or condition made while the
declarant was under the stress of excitement caused by the event or
condition."  Fed. R. Evid. 803(2).  The statements at issue were
made on September 4th at approximately 8:00 a.m., shortly after
Thibodeau arrived at the battered women's shelter where Cronin was
employed.  The evidence suggests that while the September 4th
beating lasted until 4:00 a.m., Thibodeau was unable to escape the
apartment where the assault occurred until some period after that
time.  It is likely that Thibodeau continued to suffer from the
trauma of the beating when she fled to the women's shelter, and
thus, the district court did not abuse its discretion in allowing
her statements into evidence as excited utterances.
    Finally, appellant challenges statements made by the
government in its opening statement to the jury.  Since appellant
failed to object to any of these challenged statements on the
record, we engage in plain error review.  See United States v.
Sullivan, 85 F.3d 743, 748 (1st Cir. 1996).  Under the plain error
standard of review, "appellant bears the burden of persuasion to
establish that there was an error, that the error was clear or
obvious, and that the error affected substantial rights."  United
States v. Shifman, 124 F.3d 31, 38-39 (1st Cir. 1997) (internal
quotations and citation omitted).  In its opening statement, the
government told the jury that a weapon was found in the police
cruiser where appellant had been detained when, in fact, only
ammunition had been discovered.  The prosecution also stated that
appellant admitted to owning the ammunition found in the cruiser to
a police officer, but the evidence shows that appellant did not
make such a statement to the officer.  Lastly, the government
stated that a shotgun and cocaine had been found in  certain parts
of an apartment although evidence failed to link the weapon and
drugs to those exact locations.
    Appellant does not make any particularized allegations of
bad faith on the part of the government in making its opening
statement.  Moreover, the evidence presented at trial would have
corrected any jury misperception arising from the government's
opening statement.  The arresting officer testified that he had
discovered only ammunition, not a weapon, in his cruiser.  In
addition, the evidence showed that appellant told Thibodeau he had
dropped his ammunition in the cruiser.  Finally, the evidence
connected appellant to the shotgun and drugs found in the
apartment, rendering the exact location of the contraband
irrelevant.  It is important to note that, while a curative
instruction was neither requested of nor issued by the district
court, appellant's counsel, in his opening statement, which
immediately followed the government's opening, stated, "I would
like to make it clear these opening statements are not evidence."  
Under these circumstance, we find no plain error.  Cf. United
States v. Ferrera, 746 F.2d 908, 910-11 (1st Cir. 1984) (no plain
error where very little prejudice resulted from improper remark in
government's opening statement).
    The rulings of the district court are affirmed in all
respects.

</body>

</html>